UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

Online King LLC,

                              Debtor.
-------------------------------------------------------x

Case No. 1-20-42591-las

Chapter 11

**MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR
AN ORDER EXTENDING TIME TO FILE A PLAN[1]**

On July 10, 2020, Online King LLC (the "Debtor") filed a chapter 11 petition and

elected application of subchapter V of chapter 11, codified in 11 U.S.C. §§ 1181-1195.[2] In a

subchapter V case, only the debtor may file a plan. 11 U.S.C. § 1189(a). The plan must be

filed within 90 days of the entry of the order for relief, except that the court may extend the

90-day period under limited circumstances, to wit, if a debtor demonstrates that the "need

for the extension is attributable to circumstances for which the debtor should not justly be

held accountable." 11 U.S.C. § 1189(b). Here, the 90-day period expired on October 8, 2020.

The Debtor did not file a plan nor request an extension of the 90-day period prior to October

8, 2020.

Now before the Court is a motion filed by the Debtor, dated October 21, 2020[3] [Dkt.

No. 63] (the "Motion"), for entry of an order extending the 90-day period by an additional 90

days without prejudice to the Debtor's right to request a further extension of time. The Motion

---

[1] As explained below, this Memorandum Decision is consistent with and explains further the bases of the Court's ruling at the conclusion of oral argument on November 12, 2020. Consistent with that oral ruling, an order denying the Motion was entered on November 24, 2020. [Dkt. No. 75].

[2] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[3] The Debtor filed an amended notice of the Motion, dated October 23, 2020 [Dkt. No. 64]. The only difference between the original notice and the amended notice is the address to which parties in interest must file a written response or request for hearing. In the original notice, the Debtor included the address of the Conrad B. Duberstein United States Courthouse, located at 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York 11201. In the amended notice, the Debtor changed the address to the Alfonse D'Amato United States Courthouse, located at 290 Federal Plaza, Central Islip, New York 11722. [*Compare* Dkt. No. 63, *with* Dkt. No. 64].

1

does not mention that the 90-day period has expired nor does it cite to any authority to support the request for an extension other than a passing reference to § 1189(b). No affidavit or declaration was submitted by the principal of the Debtor, and the Motion is signed by counsel. The Motion asserts, in conclusory fashion, that an extension is justified because of (i) "the amount of work entailed in negotiating and proposing a plan," (ii) "the intervening Jewish holidays during which the Debtor and its Counsel could not work," (iii) "the competing demands upon Debtors [sic] advisors and personnel," and (iv) "the inherent issues faced by all parties because of the current pandemic." Motion ¶ 8. No explanation is given as to how the religious holidays or the pandemic affected the Debtor and its operations, nor does the Motion describe what steps the Debtor has taken to propose a plan since this chapter 11 case was commenced on July 10, 2020 and when a plan might be forthcoming. In short, the Motion consists of factually unsupported and conclusory labels, and it is on that basis that the Debtor asks this Court to retroactively extend its time to file a plan by an additional 90 days.

While neither the Debtor nor any other party has raised the question of whether this Court has the authority to grant retroactive relief by entering a *nunc pro tunc* order to erase the gap occasioned by the expiration of the 90-day time period within which a debtor shall file a plan, it is a question that the Court must address in light of the United States Supreme Court decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020). *See In re Benitez*, No. 8-19-70230-reg, 2020 WL 1272258, at *1 (Bankr. E.D.N.Y. Mar. 13, 2020). Accordingly, the Court first considers whether, in view of *Acevedo*, which limited the use of *nunc pro tunc* ("now for then") orders, it is appropriate to extend by 90 days the Debtor's time to file a plan *nunc pro tunc* to October 8, 2020. Next, the Court addresses the merits of the Debtor's request for an extension of time under § 1189(b) as if the Motion had been filed and heard before the expiration of the 90-day period. In other words, even if this Court has the authority to enter a *nunc pro tunc* order extending by 90 days the

Debtor's time to file its plan, did the Debtor meet its burden of demonstrating, by affirmative evidence, that an extension is justified in this case. The answer to each of these questions is of great consequence to the Debtor because the failure to file a plan within the statutory time period constitutes "cause" to convert or dismiss a chapter 11 case under § 1112(b)(4)(J).[4]

No objection to the Motion was filed.[5] The Court heard oral argument on November 12, 2020. Joseph Y. Balisok, Esq., appeared on behalf of the Debtor in support of the Motion. Also appearing were the subchapter V trustee, Gerard R. Luckman, Esq., and counsel from the Office of the United States Trustee for the Eastern District of New York (the "United States Trustee"), Jeremy S. Sussman, Esq. At oral argument, the Debtor did not ask for time to brief the issue of whether, after *Acevedo*, the Court has authority to grant retroactive relief in this case, nor did the Debtor request leave to address this Court's inquiry as to how it was affected by the pandemic and by the religious holidays such that it was, in the first instance, unable to file a plan within the 90-day period and, in the second instance, unable to move for an extension of time before the 90-day period expired.

After careful consideration of the Motion and the arguments of counsel, for the reasons set forth on the record at the November 12, 2020 hearing, the Court denied the Motion, having determined that the Debtor failed to justify that an extension of its time to file a plan

---

[4] The United States Trustee moved to dismiss the Debtor's chapter 11 case. [Dkt. No. 70]. On December 3, 2020, the Debtor filed opposition to the motion to dismiss. [Dkt. No. 82]. On December 30, 2020, the Debtor's secured creditor, Amazon Capital Services, Inc., filed a joinder to the United States Trustee's motion [Dkt. Nos. 86, 87], as did PopSockets LLC, the holder of the largest unsecured claim against the Debtor. [Dkt. No. 85]. The Court heard oral argument on the motion on January 7, 2021, at which the Debtor consented to the dismissal of its chapter 11 case.

[5] The fact that the Motion was unopposed is not in itself a reason to grant the requested relief. The Court is not a rubber stamp. In short, the fact that no party in interest opposed the Motion does not alone relieve the Debtor of its burden to establish that an extension is warranted under the circumstances of this case. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("Rubber-stamp approval, even in the absence of objections, is improper." (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003))).

in this subchapter V case is warranted under the circumstances presented here.[6] An Order was entered on November 24, 2020 denying the Debtor's request for an extension of time to file a plan. [Dkt. No. 75]. This Memorandum Decision is consistent with and explains further the bases of the Court's ruling on November 12, 2020.

## Jurisdiction

The Court has jurisdiction over the Motion under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

## Background and Procedural History

The relevant facts are not in dispute. This was a rather straightforward case, until it wasn't. The Debtor is a vendor who fulfills orders through the Amazon.com online marketplace. *See* Debtor's Cash Collateral Motion ¶ 15 [Dkt. No. 7]. The Debtor commenced this chapter 11 case on July 10, 2020 and elected to proceed as a small business debtor under subchapter V of chapter 11. [Dkt No. 1]. Pursuant to § 1183(a), the United States Trustee appointed Gerard R. Luckman, Esq. to serve as trustee in this subchapter V case. [Dkt. No. 8]. On July 15, 2020, the Court entered an Order scheduling the status conference required by § 1188(a) for August 25, 2020. [Dkt. No. 11]. Pursuant to § 1188(c), not later than 14 days before the status conference, a debtor is required to "file with the court and serve on the [subchapter V] trustee and all parties in interest a report that details the efforts the debtor

---

[6] As noted below, because the Court concludes that § 1189(b), by its terms, implies that the Court may, in its discretion, grant retroactive relief, it is not necessary for the Court to visit further the question of whether, after *Acevedo*, this Court has the inherent authority to issue a *nunc pro tunc* order extending the Debtor's time to file a plan in this subchapter V case.

has undertaken and will undertake to attain a consensual plan of reorganization." 11 U.S.C. § 1188(c). On August 11, 2020, the Debtor filed its report with the Court. [Dkt. No. 41].[7] In its report, the Debtor stated that it (i) had discussions with its secured and unsecured creditors, as well as the subchapter V trustee, concerning the plan, (ii) had drafted a plan and sent the proposed plan to all creditors, (iii) was gathering additional information requested by secured creditor Amazon Capital Services, Inc., and (iv) intended to file a plan within the 90-day time period set forth in § 1189(b). *Id.* At the August 25, 2020 status conference, the Debtor did not state that a chapter 11 plan would not be filed before the expiration of the 90-day time period, nor did the Debtor state that it would be seeking an extension of time by which to file a plan.

Additionally, the record in this case reflects that each of the monthly operating reports filed by the Debtor for July, August, September and October state that the Debtor operated its business for the entire reporting period. [Dkt. Nos. 48, 53, 59, 74]. The record also reflects that Debtor's counsel continued to file pleadings weeks before the October 8, 2020 deadline to file a plan in this subchapter V case [Dkt. Nos. 47, 54] and that he appeared before the Court for hearings on September 15, 2020 and September 29, 2020 in connection with those pleadings.[8] Counsel did not advise the Court or the parties in attendance at each of the hearings that the Debtor did not intend to file a plan before the October 8, 2020 deadline nor did counsel advise that the Debtor intended to move for an extension of its time to do so.

---

[7] The Debtor did not file with the Court a certificate of service relating to service of the report on the subchapter V trustee and all parties in interest. The August 25, 2020 status conference was attended by counsel to the Debtor, the subchapter V trustee, counsel for the United States Trustee, and counsel for Amazon Capital Services, Inc.

[8] Of note, the record reflects that the Debtor made time to file written opposition on September 22, 2020 [Dkt. No. 54] to the application of creditor PopSockets LLC seeking the production of documents and an examination of the Debtor pursuant to Bankruptcy Rule 2004, yet the Debtor did not make time to move to extend its time to file a plan before the October 8, 2020 deadline.

**Discussion**

Under § 1189(a), only the debtor may file a plan in a subchapter V case; neither the subchapter V trustee nor creditors are permitted to do so. The deadline to file a plan in a subchapter V case is governed by § 1189(b). Pursuant to § 1189(b), a debtor proceeding under subchapter V "*shall* file a plan *not later than 90 days* after the order for relief under this chapter, except that the court may extend the period if the need for the extension is *attributable to circumstances for which the debtor should not justly be held accountable*." 11 U.S.C. § 1189(b) (emphasis added). Here, the 90-day period for the Debtor to file its plan expired on October 8, 2020. The Debtor did not file a plan by the 90-day statutory deadline nor move to extend its time to do so prior to October 8, 2020. Rather, thirteen days after the time period expired, on October 21, 2020, the Debtor filed the Motion seeking an extension of its time to file a plan by 90 days without prejudice to any further requests to extend the time period. In short, the Debtor is asking this Court to extend its time to file a plan effective as of October 8, 2020.

As noted, the Motion raises two issue. First, it requires this Court to examine whether it may issue a *nunc pro tunc* order to retroactively extend the Debtor's time to file a plan in view of *Acevedo*, where the United States Supreme Court made clear that "[f]ederal courts may issue *nunc pro tunc* orders or 'now for then' orders . . . to 'reflect the reality' of what has already occurred." *Acevedo Feliciano*, 140 S. Ct. at 700–01 (quoting Black's Law Dictionary, at 1287, and *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)). Second, if the Court has authority to grant retroactive relief and erase the gap occasioned by the expiration of the 90-day statutory time period, the Motion requires the Court to examine whether the Debtor has met its burden of proof to establish that an extension of time to file a plan is warranted under the limited circumstances set forth in § 1189(b). Because the Court concludes that the language of § 1189(b) implies that the Court may, in its discretion, grant retroactive relief, the Court

need not visit whether under the circumstances presented here, *Acevedo* precludes the use of a *nunc pro tunc* order to fashion relief retroactively to an earlier point in time.[9] That said, the question remains as to whether it is appropriate to grant retroactive relief based on the record placed before the Court. It is that question that the Court now addresses.

### A.    11 U.S.C. § 1189(b)

The Court begins, as it must, with textual analysis. *See Raila v. United States*, 355 F.3d 118, 120 (2d Cir. 2004) ("Statutory construction begins with the plain text, and, where the statutory language provides a clear answer, it ends there as well." (internal quotation marks and citation omitted)).

Section 1189(b) controls when a plan must be filed in a subchapter V case. It provides that "[t]he debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b). Thus, upon an appropriate showing, § 1189(b) authorizes a request to extend the statutory time limit by which a debtor must file a plan.

Although § 1189(b) speaks to what a debtor must show when requesting an extension of time to file a plan, it is noticeably silent as to the timing of such a request. Must the debtor move before the time period has expired or is it permissible to request an extension after the expiration of the 90-day period? Section 1189(b) does not speak one way or the other on this issue. In other words, there is no statutory proscription against making a request after the time period has expired. The lack of a date certain by which a motion under § 1189(b) must

---

[9] "*Nunc pro tunc*, Latin for 'now for then' refers to a court's inherent power to enter an order having retroactive effect." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F. 3d 202, 214 (2d Cir. 2014) (quoting *Iouri v. Ashcroft*, 478 F. 3d 76, 87 (2d Cir. 2007). That inherent power is not given by statute or rule, which may in turn allow a court to grant retroactive relief. *See In re Miller*, 620 B.R. 637, 641 (Bankr. E.D. Cal. 2020). ("Statutes may also serve as a basis, express or implied, for orders that have retroactive effect without need for inherent power *nunc pro tunc* orders.").

be made is a notable contrast to the timing of a motion for an extension of a debtor's time to file a plan in a non-small business chapter 11 case (i.e., a regular chapter 11 case) or in a non-subchapter V small business case. *Compare* 11 U.S.C. § 1189(b), *with id.* § 1121(d)(1) ("[O]n request of a party in interest *made within the respective periods specified in subsections (b) and (c) of this section* . . . the court may for cause reduce or increase the 120-day period or 180-day period referred to in this section." (emphasis added)), *and id.* § 1121(e)(3)(C) (stating that the time period in which the debtor may file a plan may be extended only if, *inter alia*, "the order extending time is signed *before the existing deadline has expired*" (emphasis added)).[10]

There is a distinct difference between § 1189(b) and § 1121. Section 1121 mandates when a motion to extend the time to file a plan must be made, whereas § 1189(b) contains no such mandate. Given that § 1189(b) was enacted after § 1121, Congress could have added a similar mandate to § 1189(b). It chose not to do so. "It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (alteration in original) (citations omitted). The marked difference in the language of these two sections leads this Court to conclude that no timing requirement exists for a motion to extend brought under § 1189(b). *See Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute."). Support for this Court's conclusion is found in the interpretation of a related section of the Bankruptcy Code, § 1221. Section 1221 controls the filing of a plan in a chapter 12 case which allows relief for "family farmers and "family fisherman" with regular annual

---

[10] Section 1181 provides that § 1121 does not apply in a case under subchapter V.

income. The text of § 1221 is identical to that of § 1189(b). It provides that "[t]he debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1221. When faced with a motion to extend the time for the debtors to file a chapter 12 plan made after expiration of the 90-day statutory time period, the court in *In re Lundberg*, 621 B.R. 561, 562 (Bankr. W.D.N.Y. 2020) stated that "nothing in the text of section 1221 prohibits relief *nunc pro tunc*." The *Lundberg* court noted the striking difference between § 1112 and § 1121(e), stating that

> the provisions for Chapter 12 contrast markedly with the language of 11 U.S.C. § 1121(e), which addresses the extension of time for filing a plan in a [non-subchapter V] small business case under Chapter 11. For such cases, section 1112(e)(3) states that the filing deadline may be extended "only if … (C) the order extending time is signed before the existing deadline has expired."

*Id*. The omission of this language in § 1221 led the *Lundberg* court to conclude that retroactive relief may be granted upon proper showing by a debtor stating that "[t]he absence of such language in section 1221 suggests that in Chapter 12, an extension is allowed when otherwise appropriate, even after the expiration of the time for filing a plan of reorganization." *Id*. The leading bankruptcy treatise is in accord.

> The 90-day time limit for filing a subchapter V plan may be extended without the requirement of section 1121(e)(3)(C) in a small business chapter 11 case that provides that the order extending the time limit must be signed before the existing deadline has expired. Accordingly, *there is no requirement in subchapter V that the debtor request the extension before the 90-day limit has expired.*

8 Collier on Bankruptcy ¶ 1189.03 (16th ed. 2020) (emphasis added).

While there is no statutory mandate that the debtor request an extension before the plan-filing deadline has expired, the failure to do so may spell the end of its reorganization effort. The failure to timely file a plan constitutes "cause" to convert the chapter 11 case to a case under chapter 7 or to dismiss the chapter 11 case. 11 U.S.C. § 1112(b)(4)(J) ("cause" to

convert or dismiss a chapter 11 case includes failure "to file . . . a plan, within the time fixed by this title"). *See* 8 Collier ¶ 1189.03 ("[B]ecause failure to file a plan within the 90-day deadline constitutes cause for dismissal of the case or conversion of the case to chapter 7, the debtor should, if possible, file the motion for extension in enough time for the motion to be acted on by the court before the time expires.").

With that said, it defies logic for a debtor to delay moving to extend its time to file a plan for it runs the risk of facing a motion to convert or dismiss its chapter 11 case. And what then, what would be the debtor's defense? Section 1112(b) is clear; once "cause" is found to exist, "the court shall" convert or dismiss the case, "whichever is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1).[11] Why run the risk? It doesn't make sense. The 90-day period in a subchapter V case affords a debtor the opportunity to propose a chapter 11 plan free of any concern that its reorganization efforts will be disrupted or thwarted by a competing plan filed by a creditor. If a debtor in subchapter V finds that the 90-day period is insufficient for it to propose and move forward with confirmation of a plan, § 1189(b) allows the court to extend the statutory time frame upon a proper showing by the debtor that an extension is justified. The better practice is to identify early on whether the time limitation will be met and, if it cannot be met, move to extend the plan filing date sufficiently in advance of the deadline so that a hearing can be held before the time has expired. That said, the Court realizes that identifying an inability to meet the statutory deadline may not be readily apparent until the debtor is on the cusp of the deadline. In those instances, the debtor should move to extend its time before the deadline and request a

---

[11] There are two limited exceptions in § 1112(b)(1) and (2) to conversion or dismissal once "cause" has been shown. The first, under § 1112(b)(1), speaks to the appointment of a trustee or examiner under § 1104. Section § 1104, however, is not applicable to subchapter V. *See* 11 U.S.C. § 1181(a). The second exception, set forth in § 1112(b)(2), is fact intense and, absent a proper showing, may not salvage the debtor's case.

hearing on shortened notice, or alternatively, request entry of a bridge order extending the plan-filing period until the motion can be heard and resolved.[12]

Having found that nothing in the language of § 1189(b) requires a motion to extend the plan-filing period be brought, heard or granted before the expiration of the 90-day time frame, and that § 1189(b), by its terms, implies that the Court may, in its discretion, grant retroactive relief, the Court takes up next the issue of whether the Debtor has made a proper showing to warrant the requested relief. The power to grant retroactive relief is one thing, whether it should be exercised is another.

**B.     The Debtor's Motion**

In addressing the issue of whether the Debtor has met its burden to establish that an extension is justified here, the Court returns to the text of § 1189(b). To prevail on its request for additional time to file a plan, the Debtor must show that the "the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b). As discussed above, the text of § 1189(b) is identical to the language set forth in § 1221 concerning what a debtor must establish to justify an extension of the 90-day statutory deadline. *See* 8 Collier ¶ 1189.03; *In re Trepetin*, 617 B.R. 841, 848 (Bankr. D. Md. 2020) ("Several aspects of Subchapter V are premised on the provisions of chapter 12 of the Code for family farmers and fishermen, including the deadline for filing the proposed plan.").

In considering a motion to extend under § 1189(b), there can be no dispute that the burden of proof rests with the debtor to establish the limited circumstances under which a court may grant an extension of the statutory deadline. This is readily apparent by analogy to motions to reduce or extend the debtor's exclusive time to file a plan in a non-subchapter

---

[12] In some jurisdictions, where a motion to extend the time to take action is filed before the expiration of the prescribed deadline, a bridge order extending the time is not necessary as the time is automatically extended until the court resolves the motion to extend the time. *See, e.g.*, S.D.N.Y. LBR 9006-2; Del. Bankr. L.R. 9006-2.

V chapter 11 case. In a non-subchapter V case, the burden is on the moving party to establish "cause" to reduce or extend the debtor's exclusive time to file a plan. *See In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) ("The Bankruptcy Code allows the court, for cause, on request of any party in interest, to reduce or increase the exclusivity periods. 11 U.S.C. § 1121(d)(1). The burden of proving cause to reduce or increase exclusivity is on the moving party, in this case the Debtors."); *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 601 (Bankr. S.D.N.Y. 2014) ("The party seeking an extension of exclusivity has the burden of proving 'cause.'" (citations omitted)). While the standard under § 1121(d)(1), i.e., "for cause," is different than the limited circumstances set forth in § 1189(b) for an extension of time, there is no reason to depart from established case law where courts grant an extension of a debtor's exclusive period to file a chapter 11 plan under § 1121(d) upon proper showing by the debtor as moving party. To find otherwise in a subchapter V case is illogical, particularly because only the debtor may file a plan in a subchapter V case. 11 U.S.C. § 1189(a). The burden rests unquestionably on the debtor to establish that "the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b). *See also In re Gullicksrud*, No. 16-11860-12, 2016 WL 5496569, at *1–2 (Bankr. W.D. Wis. Sept. 29, 2016) (discussing extension under § 1221 and finding burden is on debtor to show that inability to file a plan is due to circumstances beyond debtor's control).

Meeting that burden, however, is no small feat. It is a stringent one. *See In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 344 (Bankr. S.D. Fla. 2020) ("Based on a plain reading of this phrase, it is a clearly higher standard than the mere 'for cause' standard set forth in . . . Bankruptcy Code section 1121(d)(1) (governing extensions of a non-Subchapter V debtor's exclusive period to file a Chapter 11 plan)." (citation and footnote omitted)); 8 Collier ¶1221.01[2] (discussing burden under § 1221 and explaining rationale for stringent

requirement, i.e., the 90-day time frame "is [one of] the primary protections for creditors against a debtor's languishing in chapter 12 without confirming a plan").

This stringent burden is in keeping with the design of a subchapter V case to move the case expeditiously. It is a fast-tracked process aimed at giving the qualifying debtor a less expensive and accelerated path to reorganize its business affairs, such as the exclusive right to file a plan during the first 90 days of the subchapter V case, which period can neither be reduced nor terminated. 11 U.S.C. § 1189(a). *See In re Ventura*, 615 B.R. 1, 12 (Bankr. E.D.N.Y. 2020) ("By enacting [the Small Business Reorganization Act of 2019 (the "SBRA")], Congress intended to streamline the reorganization process for small business debtors because small businesses have often struggled to reorganize under chapter 11." (citation omitted)); *Seven Stars*, 618 B.R. at 340 (setting forth "powerful and cost-saving restructuring tools" available to subchapter V debtors and stating that "[s]ubchapter V by its very nature is intended to be an expedited process. . . . And to balance the special new powers available to small business debtors, Congress granted creditors a very important protection: the requirement that a Subchapter V case proceed expeditiously").

In moving for an extension of time, the Debtor does not mention that the 90-day plan filing deadline had already passed, nor does the Debtor explain why it could not have moved for such relief earlier. Instead, the Debtor simply requests entry of an order "extending the time within which the Debtor must file its plan for reorganization by 90 days for a total of 180 days from the date the order for relief was entered on the Petition filing date of July 10, 2020." Motion ¶ 3. The Debtor also asks that such extension be without prejudice to a request for a further extension of the plan-filing date. *Id*. Before addressing the reasons given by the Debtor as to why such an extension is necessary in this case, the Court observes that a request for an additional 90 days without prejudice to a further extension is contrary to the clear intent that a subchapter V case be an accelerated process, designed to assist the small

business debtor in its reorganization effort. *See Ventura*, 615 B.R. at 6 ("These amendments, commonly referred to as the SBRA, were instituted to broaden the opportunity for small businesses to successfully utilize the benefits of chapter 11 of the Bankruptcy Code."). In short, if the Debtor thought its case was such that it needed 180 days of exclusivity, it should have elected to proceed as a non-subchapter V small business debtor. Under § 1121(e)(1), a debtor in a non-subchapter V small business case has the exclusive right to file a plan during the first 180 days of a chapter 11 case. Of course, a non-subchapter V small business chapter 11 case does not offer a debtor the multiple benefits of proceeding in subchapter V, including the sole and exclusive right to file a plan. *See Seven Stars*, 618 B.R at 340. Here, it appears that the Debtor wanted to take advantage of the benefits offered by proceeding under subchapter V, but did not wish to be saddled with the prospect of moving the case along so as to aid from the clear cost-savings envisioned by the SBRA. Having made that observation, the Court turns to the Debtor's request.

As discussed above, § 1189(b) sets a 90-day deadline for the debtor to file a chapter 11 plan. That deadline may be extended upon a proper showing that "the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b). The Debtor sets forth four reasons why it was unable to file a plan within the 90-day statutory time frame and why it needs, at the very least, an additional 90 days to file a plan. The four reasons advanced are conclusory statements, as no explanation is given to support the argument that an extension is justified in this case. The reasons are (i) "the amount of work entailed in negotiating and proposing a plan"; (ii) "the intervening Jewish holidays during which the Debtor and its Counsel could not work"; (iii) "the competing demands upon Debtors [sic] advisors and personnel"; and (iv) "the inherent issues faced by all parties because of the current pandemic." Motion ¶ 8. For these reasons, the Debtor contends that it "cannot successfully negotiate and propose a feasible, appropriate and

14

acceptable plan within the required 90-day period." *Id*. In making this request, the Debtor does not set forth any legal authority in support of its position, other than a passing reference to § 1189, nor does the Debtor offer any explanation as to why it could not have moved for the relief sooner.

In its August 11, 2020 status conference report filed pursuant to § 1188(c), the Debtor did not offer any preview as to why it could not meet the 90-day deadline to file a plan. To the contrary the Debtor stated its intention to file a plan within the 90-day deadline imposed by § 1189(b). [Dkt. No. 41]. In its report, the Debtor stated that it (i) had discussions with its secured and unsecured creditors, as well as the subchapter V trustee, concerning the plan, (ii) had drafted a plan and sent the proposed plan to all creditors, (iii) was gathering additional information requested by secured creditor Amazon Capital Services, Inc. and (iv) intended to file a plan within the 90-day time period set forth in § 1189(b). *Id*. At the August 25, 2020 status conference, the Debtor did not state that a chapter 11 plan would not be filed before the expiration of the 90-day time period, nor did the Debtor state that it would be seeking an extension of time by which to file a plan. At the November 12, 2020 hearing on its motion for an extension of the plan-filing deadline, the Debtor stated that, approximately 60 days after the order for relief, which would be around September 10, 2020, it became apparent that a plan would not be filed by the 90-day deadline. Yet, the Debtor offered no reason for its delay in moving for an extension of this time limit. The record shows that the Motion was filed 103 days after the petition date and approximately 40 days after it became apparent to the Debtor that it would not be able to timely file a plan. It is undisputed that the Debtor knew all too well that the deadline was fast approaching yet did not seek appropriate relief from the Court before the time expired.

Two of the four reasons given by the Debtor for an extension of the 90-day deadline, namely "the amount of work entailed in negotiating and proposing a plan" and "the competing

demands upon Debtors [sic] advisors and personnel," are quickly put aside. The Court finds these reasons unavailing. They are nothing more than a generalized excuse applicable to any business bankruptcy case. Yes, there is much work to do in a reorganization case, including formulating and filing a plan, and yes, it is not uncommon for there to be "competing demands" for counsel's time and that of a debtor's personnel. Often parties are required to multi-task and work on more than one matter at a time, particularly counsel. This, however, falls far short of meeting the stringent burden placed upon a subchapter V debtor to establish the limited circumstances under which an extension of the time to file a plan is justified.

The Debtor next contends that it was unable to file a plan by the 90-day time limit because of "the intervening Jewish holidays during which the Debtor and its Counsel could not work," and "the inherent issues faced by all parties because of the current pandemic." These reasons too do not excuse the Debtor's failure to meet the statutory deadline or move earlier for an extension of its time to do so. And that is not because they are not valid reasons in a bankruptcy case to support an extension of time by which an act must be done. Rather, it is because the Debtor offered no explanation as to how any pandemic-related issues or the religious holidays affected the Debtor or counsel during the 90-day period, and in particular, during the 44 day period between the August 25, 2020 status conference and the October 8, 2020 deadline to file a plan such that the Debtor could not meet the foundational time limit or move for an extension.

One thing for certain, this Court is mindful of the unprecedented challenges due to the COVID-19 pandemic, and the disruption and hardship it has caused to both businesses and individuals and has consistently afforded parties additional time to act. Also, this Court has time and time again accommodated the requests of attorneys and *pro se* litigants that court hearings be rescheduled, that additional time be given to file pleadings, or that matters be adjourned because of the parties' need to observe religious holidays. The Court cannot

16

think of one instance where such a request was ignored and not granted. What then is the difference here? The answer lies in what the Debtor didn't do. As noted, no explanation is given as to how the religious holidays or the pandemic affected the Debtor and its operations, nor does the Motion describe what steps the Debtor has taken to propose a plan since this chapter 11 case was commenced on July 10, 2020 and when a plan might be forthcoming. The Debtor does not state which dates or time periods the Debtor or its counsel could not work or communicate because of the religious holidays, nor does the Debtor provide any reason why it could not foresee how the religious holidays would impact both work schedules and the timely administration of the bankruptcy case so that adjustments could be made from the inception of this case on July 10, 2020, or at the very least from August 25, 2020, the date of the status conference.

Similarly, merely saying that an extension should be granted because of "the inherent issues faced by all parties because of the current pandemic" does not itself carry the day. The Debtor does not identify any inherent issues it or counsel faced by the pandemic such that the Debtor was unable to file a plan before the 90-day deadline expired. Again, this Court appreciates and is cognizant of the far-reaching impact caused by the COVID-19 pandemic, and that its impact can without question affect a debtor's ability to formulate and file a plan. *See In re Donghia, Inc.*, No. 20-30487 (JJT), 2020 WL 2465503, at *3 (Bankr. D. Conn. May 12, 2020), *reconsideration denied*, No. 20-30487 (JJT), 2020 WL 6813533 (Bankr. D. Conn. July 9, 2020) ("All bankruptcy cases now confront public health restrictions and frozen business realities."). However, the issue here is that the Debtor simply said "pandemic" in a generalized and conclusory fashion as a basis for an extension of time. There is no mention in the Motion that anyone was taken ill, or unable to work due to COVID-19, or that offices were closed for certain periods of time, or that the parties did not have access to their offices or their work materials. When those reasons have been presented to the Court to support a

request for an extension of time or an adjournment, there has been no hesitation on the part of the Court to grant the request. The request has been readily granted. Just as the Court is respectful of the observance of religious holidays, it is respectful of the adversity confronting all parties by reason of the COVID-19 pandemic. Without factual support or any affirmative evidence, the non-specific and conclusory labels set forth in the Motion as the bases for an extension do not establish the requisite circumstances for which the Debtor should not justly be held accountable. The standard is not an easy one to meet, and the Debtor has fallen short.

The record also calls into question the arguments advanced by the Debtor. As noted above, the Debtor filed a status conference report on August 14, 2020 and appeared at the August 25, 2020 status conference. In the report and at the conference the Debtor made known its intention to file a plan within the 90-day time period. No indication was given by the Debtor that a plan was not forthcoming or that an extension of its time to do so was needed. Additionally, the record in this case reflects that each of the monthly operating reports filed by the Debtor for July, August, September and October state that the Debtor operated its business for the entire reporting period. [Dkt. Nos. 48, 53, 59, 74].

The record also reflects that Debtor's counsel continued to file pleadings weeks before the October 8, 2020 deadline to file a plan in this subchapter V case [Dkt. Nos. 47, 54] and that he appeared before the Court for hearings on September 15, 2020 and September 29, 2020 in connection with those pleadings. Counsel did not advise the Court or the parties in attendance at each of those hearings that the Debtor did not intend to file a plan before the October 8, 2020 deadline nor did counsel advise that the Debtor intended to move for an extension of its time to do so. In particular, the record shows that on September 22, 2020, two weeks before the expiration of the 90-day deadline, the Debtor filed an objection to a creditor's motion pursuant to Bankruptcy Rule 2004 [Dkt. No. 54] and appeared at the September 29, 2020 hearing on that motion. Additionally, the Debtor submitted a proposed interim cash

collateral order to this Court on September 30, 2020, which included a proposed budget for the period of September 15, 2020 through October 14, 2020.

At the November 12, 2020 hearing to consider the Motion and the Debtor's request for retroactive relief, counsel to the Debtor asserted that, as to the dates of the religious holidays that caused "the office" to close (counsel did not specify whether he was referring to his office or the Debtor's), such dates were from October 14, 2020 through October 24 or 25, 2020. The Court was not persuaded for three reasons. First, those dates are after the October 8, 2020 deadline to file a plan. Second, counsel filed the Motion on October 21, 2020 and filed an amended notice of motion on October 23, 2020. Third, he appeared before this Court at a telephonic hearing on October 22, 2020 concerning the Debtor's continued request to use cash collateral. All this activity, both before and after the deadline to file a plan passed, belies the reasoning given as to why the Debtor could not meet a critical time limitation in this case.

The conclusory arguments advanced by the Debtor in the Motion and at the November 12, 2020 hearing are contradicted by the record placed before the Court. In sum, the Motion consists of factually unsupported and conclusory labels, and on that basis the Court cannot find that the Debtor meets the stringent burden of showing that it was unable to timely file a plan due to circumstances for which it should not justly be held accountable. Some may say a harsh result, but words matter, as does evidence.

## Conclusion

For the reasons set forth on the record at the November 12, 2020 hearing, and for the

above reasons, the Motion is denied.



**Dated: January 19, 2021**
    **Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**